**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCELO SISON SARMIENTO,

    Petitioner,

    v.

THOMAS L. CAREY, Warden,

    Respondent.
_____/

No. 05-2091 PJH

**ORDER DENYING PETITION FOR FOR WRIT OF HABEAS CORPUS**[1]

Before this court is the petition for a writ of habeas corpus filed by state prisoner, Marcelo Sison Sarmiento ("Sarmiento"), pursuant to 28 U.S.C. § 2254. The court ordered the state to show cause why the writ should not be granted. The state filed an answer and memorandum of points and authorities in support, but Sarmiento did not respond with a traverse. Having reviewed the parties' papers, the record, and having carefully considered their arguments, the court hereby DENIES the petition.

**BACKGROUND**

**I.  Procedural History**

On February 21, 2002, a San Francisco Superior Court jury convicted Marcelo Sison Sarmiento of second degree murder. The court sentenced Sarmiento to 15 years to life, plus 1 year consecutive for a knife use enhancement. The California Court of Appeal affirmed his conviction in an unpublished opinion. The California Supreme Court denied review on February 24, 2004.

---

[1] Pursuant to Civil Local Rule 7-13, this order may not be cited except as provided by Civil Local Rule 3-4(e).

## II.     Factual History[2]

On the morning of October 29, 1999, Marcelo Sarmiento was arguing with V.R., his girlfriend and the mother of his child.  The argument took place in the apartment where Sarmiento and V.R. lived with their high school-age son.  Sarmiento told V.R. that he believed she was cheating on him, an issue which was a frequent source of contention between the two.

Sarmiento and V.R.'s argument was so loud that morning that it twice woke their son, who was sleeping in his own bedroom.  After her son woke up the second time, V.R. ran into his bedroom, screaming.  She tried to close the door behind her, but Sarmiento forced his way into the room, holding a knife.

Once all three were in the bedroom, Sarmiento's son tried to grab the knife out of his father's hand, but was unable to do so.  Sarmiento stabbed V.R. repeatedly, and then stabbed himself.  His son fled downstairs and called 911.

By the time the San Francisco Fire Department arrived, V.R. was dead.  Sarmiento had nine stab wounds to his chest and abdomen.

Tests run on Sarmiento revealed his blood-alcohol level was .1 percent and he tested positive for cocaine.

In addition to a history of drug abuse, the evidence at trial revealed that Sarmiento had a past marked by psychological problems.  A neighbor of Sarmiento's testified that Sarmiento was obsessed with infidelity.  Sarmiento's ex-wife, J.P., also testified that he frequently accused her of having an affair and threatened to kill her, particularly after he had consumed drugs or alcohol.

A psychiatrist for the defense, Roderick Pettis, determined that Sarmiento had a paranoid delusional disorder with a jealous subtype.  Pettis believed that the disorder was unrelated to Sarmiento's substance abuse.  A psychiatrist for the prosecution, Ronald

---

[2] A more extensive summary of the facts can be found in the state appellate court's December 9, 2003 decision.

2

Roberts, also testified that he diagnosed Sarmiento with a delusional disorder – jealous type.

## ISSUE

Sarmiento challenges his conviction on the grounds that his due process rights were violated when the prosecutor, during closing argument, allegedly attacked the integrity of defense counsel and accused defense counsel of misleading the jury.

## STANDARD OF REVIEW

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so the provisions of that act apply. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court authority, falling within the first clause of §§ 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). "Clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 1175 (2003). This "clearly established" law "refers to the holdings, as opposed to the *dicta*, of [Supreme Court] decisions as of the time of the relevant state court decision*." Id.*

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the

3

prisoner's case. *Id.* at 1174. However, this standard requires the state court decision to be more than incorrect or erroneous. *Id.* For the federal court to grant habeas relief, the state court's application of the Supreme Court authority must be objectively unreasonable. *Id.* at 1174-1175. The "objectively unreasonable" standard is different from the "clear error" standard in that "the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Id.* at 1175; *see Clark v. Murphy*, 331 F.3d 1062,1068 (9th Cir. 2003). Therefore, it is not enough that a habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. Rather, the habeas court must conclude that the state court's application of federal law was objectively unreasonable. *Andrade*, 538 U.S. at 76; *Clark*, 331 F.3d at 1068.

However, when the state court decision does not articulate the rationale for its determination or does not analyze the claim under federal constitutional law, a review of the court's application of clearly established federal law is not possible. *See Delgado v. Lewis*, 223 F.3d 976, 981-81 (9th Cir. 2000); *see also* 2 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 32.2, at 1424-1426 & nn. 7-10 (4th ed. 2001). When confronted with such a decision, a federal court must conduct an independent review of the record and the relevant federal law to determine whether the state court's decision was "contrary to, or involved an unreasonable application of" clearly established federal law. *Delgado*, 223 F.3d at 982.

> When a state court does not furnish a basis for its reasoning, we have no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context . . . [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the 'objectively reasonable' lens ground by *Williams* [*v. Taylor*, 529 U.S. 362 (2000)] . . . Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law . . . Only by that examination may we determine whether the state court's decision was objectively  unreasonable.

*Id.* at 981-82.

As for state court findings of fact, under § 2254(d)(2), a federal court may not grant a

4

habeas petition by a state prisoner unless the adjudication of a claim on the merits by a state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. section 2254(d)(2). The "clearly erroneous" standard of unreasonableness that applies in determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in determining the "unreasonable determination of facts in light of the evidence" under section 2254(d)(2). *See Torres v. Prunty*, 223 F.3d 1103, 1107-1108 (9th Cir. 2000). To grant relief under 2254(d)(2), a federal court must be "left with a firm conviction that the determination made by the state court was wrong and that the one [petitioner] urges was correct." *Id.* at 1108.

**DISCUSSION**

**I.    Legal Standards**

Inappropriate comments made by the prosecutor in the presence of the jury may constitute reversible prosecutorial misconduct. *See Darden v. Wainwright*, 477 U.S. 168, 179-81 (1986). However, the appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *See id.* A defendant's due process rights are violated only when a prosecutor's misconduct renders the trial "fundamentally unfair." *Id.* Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.).

Factors which a court may take into account in determining whether misconduct rises to a level of a due process violation are: (1) the weight of evidence of guilt, *compare United States v. Young*, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt) *with United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern, *see*

1  *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a
2  critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to
3  disclose information showing potential bias of witness especially significant because
4  government's case rested on credibility of that witness); and (4) whether a prosecutor's
5  comment misstates or manipulates the evidence, *see Darden*, 477 U.S. at 182.

However, "[p]rosecutorial misconduct which rises to the level of a due process violation may provide the grounds for granting a habeas petition only if that misconduct is deemed prejudicial under the 'harmless error' test articulated in *Brecht*." *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004). Thus, even if this court determined that a due process violation occurred, the court must still evaluate whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## II. The Prosecutor did not Commit Misconduct

During closing argument on rebuttal, the prosecutor made the following remarks:

> The reason why the defense attorney wants to talk about these things [i.e. Sarmiento's alleged psychological disorder] is because there is no defense in this case. There's no defense. His job is to muddy the waters, to stir up smoke. Imagine if you will, you're in a room. The truth is in the room. It's right over there, right in the corner. You can see it clearly. Mr. Rosen's [defense counsel] job is to stand there and create smoke, blow it in the room so you can't see.

RT 887. Defense counsel then objected and asked that the jury be advised that the prosecutor's statement was improper. The court refused to admonish the jury at that point, but asked the prosecutor to move on to other areas of her final argument. Sarmiento argues here

United States District Court
For the Northern District of California

that the prosecutor's comments during closing argument amounted to prosecutorial misconduct because they were a personal attack on defense counsel and an accusation that defense counsel was attempting to mislead the jury.

The California Court of Appeal found that the prosecutor's rebuttal argument did not constitute prosecutorial misconduct because it was neither a personal attack on defense counsel, nor was it reasonably likely to improperly influence the jury.  The court determined that rather than an assault on the defense attorney's integrity, the prosecutor's comments attempted "to steer the jury away from the evidence of Sarmiento's guilt and towards the questionable evidence of Sarmiento's jealous delusional disorder defense."  Exh. E at 7.  The court found that the prosecutor's description of defense counsel's strategy, including the use of analogies such as "creating smoke" and "muddying the waters," was fair argument.

Sarmiento argues before this court that the prosecutor's closing remarks improperly suggested that defense counsel knew his client was guilty, and that defense counsel's job was to help people "get away" with crimes.  Moreover, Sarmiento contends that the trial court's failure to admonish the jury, coupled with the court's suggestion that the prosecutor "move on to other areas," served to reinforce the idea that the remarks the prosecutor had made were proper argument.

A prosecutor may not gratuitously attack defense counsel's integrity and veracity.  *See Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983) (prosecutor's comments equating defendant's hiring of counsel with guilt and comments attacking integrity of defense counsel without evidence improper and error of constitutional dimension).  However, there is no constitutional error unless the comments were prejudicial to the point of denying the defendant a fair trial. *Compare United States v. Rodrigues*, 159 F.3d 439, 449-51 (9th Cir. 1998) (combination of prosecutor's misstatement of the law with slander of defense counsel was prejudicial where there was no rebuke of false accusations by the court, no response was allowed the vilified lawyer and no curative instruction was given), *amended*, 170 F.3d 881 (9th Cir. 1999) *with United States v. Foster*, 711 F.2d 871, 883 (9th Cir. 1983) (implication that

defense counsel was part of conspiracy to distribute heroin was neutralized by prosecutor's corrective statement in response to objection by defense counsel).

Contrary to Sarmiento's suggestion, the prosecutor's arguments in this case were not a personal attack on the integrity of defense counsel that rendered the whole trial fundamentally unfair.  Unlike in *Bruno*, the prosecutor here did not imply that defense counsel was unethical or that his actions were illegal, nor did she try to equate defendant's retention of counsel with guilt.  721 F.2d at 1194.  Rather, her statement served as a critique of defense counsel's argument and an attempt to convince the jury that they should follow her reasoning.  This court agrees with the California Court of Appeal that such tactics are fair argument.  *See U.S. v. Santiago*, 46 F.3d 885, 892 (9th Cir. 1995) (holding district court did not abuse discretion in allowing prosecutor's reference to defense "tactics" that "appear[ed] to pass for a defense")*; U.S. v. Lopez-Alvarez,* 970 F.2d 583, 598 (9th Cir. 1992) (finding the prosecutor's comparison of defense counsel to a magician and a squid acceptable).  Therefore, the state appellate court's decision that the prosecutor's statement did not constitute prosecutorial misconduct involved neither an unreasonable determination of facts in light of the evidence, nor an unreasonable application of federal law.

Even if this court found that the prosecutor's statement during closing argument was improper, Sarmiento is entitled to relief only if he can establish that the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht*, 507 U.S. at 637.

Isolated instances of prosecutorial misconduct do not require reversal of a conviction.  *Lincoln v. Sunn*, 807 F2d 805, 809 (9th Cir 1987).  The prosecutor's statement in her closing remarks did not constitute a pattern of misconduct that infected the whole trial with prejudice.  Rather, the remarks were part of a single incident that was insignificant in the overall context of closing argument, let alone the whole trial.

In addition, although the court refused to admonish the jury at the time the comment was made, the trial court did remind the jury before closing remarks and in the written jury charge that they were not to consider statements made by attorneys as evidence.  CT 173 (note),

8

1  176-177; RT 784-85.  Jurors are presumed to follow the court's instructions absent
2  extraordinary circumstances.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  Where,
3  as here, the court instructed jurors not to take the prosecutor's statement as evidence, this
4  court must assume the jurors followed the court's direction.

Therefore, given that the prosecutor's statement was a single incident and that the trial judge instructed the jury not to consider closing remarks as evidence, Sarmiento has failed to demonstrate that the prosecutor's statement had an injurious effect on the jury's verdict.

## CONCLUSION

For the reasons set forth above, Sarmiento's petition for writ of habeas corpus is DENIED.  This order fully adjudicates the motion listed at No. 1 of the clerk's docket for this case and terminates all other pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 22, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge